NO. 07-09-0076-CR

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 JUNE 10, 2010

 TERRILL E. CRUZ, APPELLANT

 v.

 THE STATE OF TEXAS, APPELLEE

 FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;

 NO. 2719; HONORABLE STUART MESSER, JUDGE

Before QUINN, C.J., HANCOCK and PIRTLE, JJ.

 MEMORANDUM OPINION

 Appellant, Terrill E. Cruz, was convicted by a jury of
aggravated assault with a deadly weapon[1] after which he was
sentenced to twenty years confinement and fined ten thousand dollars.
Appellant asserts the trial court erred by: (1) denying his motion for
a continuance; (2) overruling his objection to the State's notice of
its intent to introduce evidence of extraneous offenses as punishment
evidence ("State's Notice") because the trial judge served as
prosecuting attorney at the time the alleged offenses were committed;
(3) forcing Appellant to request the jury assess his punishment
because the trial court overruled his objection to the State's Notice;
and (4) overruling his objection to the State's Notice when most of
the offenses were arrests only and prosecution was barred by the
applicable statutes of limitation. Appellant also asserts: (5)
because the trial judge did not disqualify himself due to his prior
service as a district attorney, the trial court lacked jurisdiction to
hear the matter; (6) the trial court erred in admitting accomplice
testimony when there was insufficient corroboration; (7) the trial
court erred in admitting the written statement of an accomplice in the
absence of sufficient corroboration; (8) the trial court erred in
denying Appellant's motion for a directed verdict; (9) there was no
credible evidence Appellant used or exhibited a deadly weapon; and
(10) the evidence was legally and factually insufficient to support
the jury's verdict. We affirm.

 Background

 On July 30, 2008, a Collingsworth County Grand Jury presented an
indictment charging that Appellant, on or about July 4, 2008,
intentionally or knowingly threatened Clarence Antonio Owens with
imminent bodily injury by shooting at Owens's residence with a deadly
weapon, to-wit: an unknown caliber firearm. At trial, Collingsworth
County Sheriff Joe Stuart testified that, on July 4, 2008, he was
dispatched to 705 Dalhart Street in Dalhart, Texas. When he arrived,
he observed the front storm door was shattered and there were bullet
holes in the front of the residence. In his opinion, the bullet holes
resulted from an unidentified firearm, possibly a 9-millimeter, being
fired at the home. According to his testimony, the firearm used was a
deadly weapon.[2]

 Clarence Antonio Owens testified he lived at 705 Dalhart Street.
 On July 4, he was watching television when he heard what he thought
were firecrackers outside. When he went to the front door, he saw a
green pickup truck. Owens jumped into his car and followed the
pickup. He identified the pickup as belonging to Appellant and then
drove home. After returning home, he observed the same pickup pulling
up to his house a second time and witnessed another shooting. His
storm door was shattered and there were bullet holes in his house. He
subsequently gave a statement to the police indicating he had seen
Appellant drive by his house twice and he heard gunshots both times.

 Lynda Ceballos, Owens's girlfriend, testified she was also at
the house on July 4th when she heard what she thought were
firecrackers outside the house. When she went to the front door, she
observed smoke and Appellant's green pickup at the stop sign across
from their house. While standing out by the mailbox, Ceballos could
see Owens chasing the pickup and heard more shots. While she and
Owens were trying to decide what action to take, Ceballos heard
another shot and ran to the front door. She observed the same pickup
driving by with Appellant hanging outside the passenger-side window
firing at the house over the top of the pickup. She could not see who
was driving the pickup. Shortly thereafter, she called the police.

 Ceballos further testified that after Appellant was freed on
bail he came over to Owens's house. After she told Appellant to
leave, he told her he was sorry for shooting up the house and he
admitted he had been drinking that night.

 Rene Granados testified he was Appellant’s friend. In the early
morning hours of July 4, he and Appellant were at his house drinking
beer. They left the house to cruise around and Appellant directed
Granados to drive down Dalhart Street. While Appellant was sitting on
the pickup's passenger window, Granados heard something like gunshots
coming from the front of the pickup. Granados testified that he did
not know Appellant was carrying a firearm and that after this event he
went home and went to bed.

 Granados also testified Appellant had approached him regarding
his testimony before trial. Appellant told him he really didn't need
to be in court and "[i]t would be in his best interest that if [he]
was going to be [in court] today, he would try to eliminate me from
being [in court] today." Granados testified Appellant told him he was
a "key witness." Granados also testified he gave a written statement
to the police wherein he stated that, as he and Appellant drove by
Owens's house, Appellant "started unloading a pistol at Antonio's
house."

 Thereafter, the jury convicted Appellant of aggravated assault
with a deadly weapon and sentenced him to twenty years confinement and
assessed a ten thousand dollar fine. This appeal followed.

 Discussion

 I. Motion for Continuance

 Under the Texas Code of Criminal Procedure, criminal actions may
be continued "upon sufficient cause shown; which cause shall be fully
set forth in the motion." Tex. Code Crim. Proc. Ann. art. 29.03
(Vernon 2006). Motions to continue rest within the trial court's
discretion; Gallo v. State, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007),
and, on appeal, a defendant must demonstrate that his defense was
"actually prejudiced" by the court's ruling. Janecka v. State, 937
S.W.2d 456, 468 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 825, 118
S.Ct. 86, 139 L.Ed.2d 43 (1997) (citing Heiselbetz v. State, 906
S.W.2d 500, 511 (Tex.Crim.App. 1995)).

 Appellant filed a motion to continue a December 29th trial date.
 In his motion, he asserted trial of his case during the Christmas-New
Year's holiday season would cause him prejudice because jurors would
be "greatly inconvenienced, will not want to serve during that holiday
period, and will be likely to hold Defendant responsible for such
inconvenience." Appellant's claimed error must fail because his
motion is premised on unsubstantiated assumptions and shows no actual
prejudice.[3] Accordingly, the trial court did not abuse its
discretion by denying Appellant's motion for continuance. Appellant's
first point of error is overruled.

II. State's Notice of Intent to Introduce Evidence of Extraneous
 Offenses

 A. Preservation of Error

 In points of error two, three, and four, Appellant asserts the
trial court erred by overruling his objection to the State's Notice of
Intent to Introduce Evidence of Extraneous Offenses, Punishment
Evidence and/or Prior Conviction Information filed December 19, 2008
("State's Notice"). Appellant contends that during a pretrial hearing
the trial court denied his objection to the State's Notice. A review
of the record belies this contention. What the record does reflect is
that the court agreed with Appellant's objection as to the
guilt/innocence phase of the trial and then cautioned the prosecutor
to approach the bench prior to the introduction of any such evidence
during the punishment phase.

 Rule 33.1 of the Texas Rules of Appellate Procedure governs
preservation of error, and states, in relevant part:

 (a) In General. As a prerequisite to presenting a complaint for
 appellate review, the record must show that:

 * * *

 (2) the trial court:

 (A) ruled on the request, objection, or motion, either
 expressly or implicitly; or

 (B) refused to rule on the request, objection, or motion,
 and the complaining party objected to the refusal.

 Here, the record shows that Appellant never obtained an adverse
ruling to his objection. Whether a particular complaint is preserved
for appeal depends on whether the complaining party clearly conveyed
to the trial judge the particular complaint, including the precise and
proper application of the law as well as the underlying rationale, and
obtained a ruling on that complaint. See Pena v. State, 285 S.W.3d
459, 464 (Tex.Crim.App. 2009). Because the trial court never denied
Appellant's objection, points of error two through four present
nothing for review and are, therefore, overruled.

 B. Implied Overruling of Appellant's Objection

 While we do not so find, to the extent that it might be argued
that the trial court implicitly overruled Appellant's objection to the
State's Notice during the pretrial hearing by cautioning the
prosecution to approach the bench prior to tendering such evidence,
any such ruling would be nothing more than a preliminary evidentiary
ruling that preserves nothing for appeal. Martinez v. State, 98
S.W.3d 189, 193 (Tex.Crim.App. 2003) (summarize holding); Harnett v.
State, 38 S.W.3d 650, 655 (Tex.App.--Austin 2000, pet ref'd).

III. Jurisdiction - Judicial Disqualification

 By his fifth point of error, Appellant contends that, because
the trial judge was disqualified on constitutional and statutory
grounds, the trial court lacked jurisdiction over Appellant's case.
Appellant asserts the trial judge should have been disqualified
because he served as the District Attorney for the 100th District at
the time when Appellant's prior arrests, the subject of the State's
Notice of Intent to Introduce Evidence of Extraneous Offenses,
occurred. As a result, he asserts the trial court lacked jurisdiction
to hear his case.

 The applicable statute provides that "[n]o Judge . . . shall sit
in any case . . . where he has been of counsel for the State or the
accused." See Tex. Code Crim. Proc. Ann. art. 30.01 (Vernon 2006).
See also Tex. Const. art. V, § 11. These provisions have been
interpreted as mandatory, unwaivable, and jurisdictional. Gamez v.
State, 737 S.W.2d 315, 318 (Tex.Crim.App. 1987). However, for over a
century the Court of Criminal Appeals has consistently held that, as
applied to former prosecutors, a judge is disqualified only if the
record affirmatively demonstrates that he actively participated as a
prosecutor in the very case he is presiding over as a judge. See,
e.g., id. at 319; Ex parte Miller, 696 S.W.2d 908, 910 (Tex.Crim.App.
1985); Holifield v. State, 538 S.W.2d 123, 125 (Tex.Crim.App. 1976);
Carter v. State, 496 S.W.2d 603, 604 (Tex.Crim.App. 1973); Utzman v.
State, 32 Tex. Crim. 426, 24 S.W. 412, 412 (Tex.Crim.App. 1893).
Without more, the mere fact that a judge served as a district attorney
while an appellant's case was pending does not disqualify the judge.
Gamez, 737 S.W.2d at 319-20; Hathorne v. State, 459 S.W.2d 826, 829
(Tex.Crim.App. 1970), cert. denied, 402 U.S. 914, 91 S.Ct. 1398, 28
L.Ed.2d 657 (1971).

 There is no evidence Judge Messer participated as counsel in
this case. A former prosecutor is not disqualified from presiding
over a trial when a new offense is charged; Hathorne, 459 S.W.2d at
829-30, even where he personally prosecuted the defendant on a prior
felony conviction used by the State for enhancement purposes. Nevarez
v. State, 832 S.W.2d 82, 88 (Tex.App.--Waco 1992, pet. ref'd); O'Dell
v. State, 651 S.W.2d 48, 50 (Tex.App.--Fort Worth 1983, pet. ref'd).
The most that can be said on this record is that Judge Messer was
district attorney at the time Appellant was arrested for various
offenses. Accordingly, Appellant's fifth point of error is overruled.

IV. Accomplice Evidence and Sufficiency of the Evidence

 Appellant's points of error six, seven, eight, nine, and ten
essentially challenge the sufficiency of the evidence in support of
Appellant's conviction. Points of error six and seven challenging the
sufficiency of the accomplice witness corroboration assert the trial
court erred in admitting the testimony and written statement of Rene
Granados, an accomplice as a matter of law,[4] because there was no
credible evidence of independent corroboration as to whether Appellant
used or exhibited a firearm. Point of error eight contends the trial
court erred in denying Appellant's motion for directed verdict,[5]
while points of error nine and ten ask whether, in the absence of
Granados's accomplice testimony and written statement, there was
legally and factually sufficient evidence to support the jury's
verdict.
 A. Standard of Review
 In assessing the legal sufficiency of the evidence to support a
criminal conviction, a reviewing court must consider all the evidence
in the light most favorable to the verdict and determine whether,
based on that evidence and reasonable inferences to be drawn
therefrom, a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hooper v. State,
214 S.W.3d 9, 13 (Tex. 2007). In our analysis, we must give deference
to the responsibility of the jury to fairly resolve conflicts in
testimony, weigh the evidence, and draw reasonable inferences from
that evidence. Id.

 B. Aggravated Assault with a Deadly Weapon

 The elements of aggravated assault with a deadly weapon as
alleged in the indictment are that a person: (1) intentionally and
knowingly threatens another (2) with imminent bodily injury and (3)
uses a deadly weapon during the commission of the assault. See Tex.
Penal Code Ann. §§ 22.01 and 22.02(a) (Vernon 2003). A firearm is a
deadly weapon per se. Ex parte Huskins, 176 S.W.3d 818, 820
(Tex.Crim.App. 2005). See Tex. Penal Code Ann. § 1.07(a)(17)(A)
(Vernon Supp. 2009).

 C. Accomplice Witness Rule and Legal Sufficiency

 Article 38.14 of the Code of Criminal Procedure provides that a
conviction cannot stand on accomplice testimony unless there is
evidence tending to connect the defendant to the offense. Tex. Code
Crim. Proc. Ann. art. 38.14 (Vernon 2005). This rule is a statutorily
imposed review and is not derived from federal or state constitutional
principles that define legal and factual sufficiency standards. Brown
v. State, 270 S.W.3d 564, 568 (Tex.Crim.App. 2008), cert. denied, ___
U.S. ___, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009).

 Accordingly, when evaluating the sufficiency of corroboration
evidence under the accomplice-witness rule, we eliminate the
accomplice testimony from consideration and then examine the remaining
portions of the record to see if there is any evidence that tends to
connect the accused with the commission of the crime. Castillo v.
State, 221 S.W.3d 689, 691 (Tex.Crim.App. 2007) (citing Soloman v.
State, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001)). To meet the
requirements of the rule, the corroborating evidence need not prove
the defendant's guilt beyond a reasonable doubt. Brown, 270 S.W.3d at
568; Trevino v. State, 991 S.W.2d 849, 851 (Tex.Crim.App. 1999).
Rather, viewing the evidence in a light most favorable to the verdict;
Brown, 270 S.W.3d at 568 (citing Gill v. State, 873 S.W.2d 45, 48
(Tex.Crim.App. 1994)), the non-accomplice evidence must simply link
the accused in some way to the commission of the crime and show that a
rational factfinder could conclude that the non-accomplice evidence
"tends to connnect" appellant to the offense; Simmons v. State, 282
S.W.3d 504, 509 (Tex.Crim.App. 2009); Hernandez v. State, 939 S.W.2d
173, 178-79 (Tex.Crim.App. 1997), but not necessarily to every element
of the crime. Vasquez v. State, 56 S.W.3d 46, 48 (Tex.Crim.App.
2001). Moreover, there is no set amount of non-accomplice
corroboration evidence that is required for sufficiency purposes;
"[e]ach case must be judged on its own facts." Gill v. State, 873
S.W.2d 45, 48 (Tex.Crim.App. 1994).

 At trial, Sheriff Stuart testified that, when he arrived at
Owens's residence, he observed that the front storm door was shattered
and there were bullet holes in the front door and the house. Owens
testified that, after he heard gunfire outside his house, he observed
Appellant's pickup and gave chase. Owens observed Appellant's pickup
a second time at his house, and again heard gunshots. Both Stuart and
Owens confirmed that his storm door was shattered and there were
bullet holes in his house.

 Ceballos, Owens's girlfriend, also testified that, after she
heard gunshots outside Owens's house the first time, she went to the
front door and observed Appellant's pickup. She testified that,
standing by the mailbox, she also observed Owens give chase and heard
more gunshots. She further testified that, after she heard shots
outside the house a second time, she observed the same truck with
Appellant hanging outside the passenger-side window firing at the
house over the top of the truck. Furthermore, according to her
testimony, when Appellant was freed on bail he came to Owens's house
and apologized for shooting up the house that night.[6]

 The physical evidence of the bullet holes at Owens's house,
Sheriff Stuart's testimony, Owens's testimony, Ceballos's testimony,
and Appellant's own incriminating statement, all corroborate
Granados's accomplice testimony that he observed Appellant sitting on
the pickup's passenger-side window, as they drove past Owens's house,
while he heard something like gunshots coming from the front of the
truck.

 Taking all the evidence together, including Granados's
accomplice-witness testimony, we find legally sufficient evidence from
which a jury could reasonably infer Appellant intentionally or
knowingly threatened Owens with imminent bodily injury while using and
exhibiting a deadly weapon during the commission of an assault.

 D. Factual Insufficiency

 When conducting a factual sufficiency review, we examine all the
evidence in a neutral light and determine whether the trier of fact
was rationally justified in finding guilt beyond a reasonable doubt.
Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), cert.
denied, 552 U.S. 920, 128 S.Ct. 282, 169 L.Ed.2d 206 (2007); Watson v.
State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). We give deference to
the fact finder's determination when supported by the record, and
cannot reverse a conviction unless we find some objective basis in the
record demonstrating that the great weight and preponderance of the
evidence contradicts the verdict. Watson, 204 S.W.3d at 417. The
criminal verdict will be set aside "only if the evidence is so weak
that the verdict is clearly wrong and manifestly unjust, or the
contrary evidence so strong that the standard of proof beyond a
reasonable doubt could not have been met." Garza v. State, 213 S.W.3d
338, 343 (Tex.Crim.App. 2007). In addition, the fact finder is
entitled to judge the credibility of the witnesses and may choose to
believe all, or some, or none of the testimony presented. Chambers v.
State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

 Appellant contends the State's evidence is factually
insufficient because: (1) the police did not recover any gun,
bullets, or shell casings at the crime scene; (2) the weapon could
have been a BB gun, pellet gun, or fireworks; (3) Owens's front door
could have been damaged in other ways; (4) Granados did not see a
pistol; (5) Ceballos's testimony was contradictory and inconsistent;
and (6) Granados's testimony was not believable.

 Regarding Appellant's first four contentions, Sheriff Stuart
testified there were three to four bullet holes in the front of the
house that, in his opinion, were made by a firearm, possibly a 9-
millimeter handgun, being fired at the house.[7] Deputy Selfridge
also testified to the presence of bullet holes in the house and opined
that the bullet hole in the bottom of the glass storm door was
consistent with a gunshot. Deputy Gilbert corroborated the testimony
of Sheriff Stuart and Deputy Selfridge and photographed the bullet
holes. Although Granados did not see Appellant firing a pistol, he
did state that Appellant unloaded a pistol at Owens's residence.
Owens himself testified he heard gunshots during both drive-by
shootings and identified Appellant's pickup as the vehicle from which
the shots were fired. Ceballos corroborated Owens account and further
testified the gunshots were coming from Appellant's pickup when Owens
gave chase after the first drive-by shooting and, during the second
drive-by shooting, she saw Appellant sitting atop the passenger-side
window firing over the top of the pickup. Granados testified that, as
they drove by Owens's house, Appellant was sitting on the passenger-
side window as he heard something like gunshots coming from the front
of the truck. Finally, after Appellant was released from jail, he
came to Owens's house and apologized for shooting up the house.

 Based upon this evidence, we cannot say that the absence of a
gun, bullets, or shell casings coupled with the possibility that the
door could have been damaged in other ways, makes the State's evidence
so weak that the verdict is clearly wrong or manifestly unjust.
Further, although some of the testimony may have been contradictory or
inconsistent, our evaluation of the evidence "should not substantially
intrude upon the jury's role as the sole judge of the weight and
credibility of witness testimony." Jones v. State, 944 S.W.2d 642,
648 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100,
39 L.Ed.2d 54 (1997). See Washington v. State, 127 S.W.3d 197, 204
(Tex.App.--Houston [1st Dist.] 2003, pet. dism'd). Accordingly, we
find that the evidence in support of the jury's verdict was factually
sufficient. Appellant's points of error six through ten are
overruled.

 Conclusion

 The trial court’s judgment is affirmed.

 Patrick A. Pirtle
 Justice
 Do not publish.
-----------------------
[1]See Tex. Penal Code Ann. § 22.02(a) (Vernon 2003).

[2]Deputies Bill Selfridge and Billy Gilbert corroborated Sheriff
Stuart's testimony.

[3]Prior to trial, Appellant did not voir dire prospective jurors on
whether they were inconvenienced, wanted to serve during the holiday
season, or would hold Appellant responsible for any inconvenience.

[4]During trial, the trial judge and the parties agreed Granados was
an accomplice as a matter of law.

[5]A complaint regarding a trial court's failure to grant a motion for
directed verdict is a challenge to the legal sufficiency of the
State's evidence at trial; Canales v. State, 98 S.W.3d 690, 693
(Tex.Crim.App. 2003); Williams v. State, 937 S.W.2d 479, 482
(Tex.Crim.App. 1996), not factual sufficiency. See Long v. State, 137
S.W.3d 726, 736 (Tex.App.--Waco 2004, pet. ref'd); Turner v. State,
101 S.W.3d 750, 761 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd).

[6]An accused's confession alone can be used to supply the necessary
corroboration for an accomplice's testimony. Jackson v. State, 516
S.W.2d 167, 171 (Tex.Crim.App. 1974); Rayburn v. State, 362 S.W.2d
649, 650 (Tex.Crim.App. 1962); Mitchell v. State, 669 S.W.2d 349, 350
(Tex.App.--Houston [14th Dist.] 1984, no pet.). Because the record
reflects that Appellant's confession was voluntary; see Zuliani v.
State, 903 S.W.2d 812, 825 (Tex.App.--Austin 1995, pet. ref'd), and
proof of the confession does not depend on accomplice testimony;
Thompson v. State, 54 S.W.3d 88, 94 (Tex.App.--Tyler 2000, pet. ref'd)
(citing Farris v. State, 819 S.W.2d 490, 495 (Tex.Crim.App. 1990)),
Appellant's incriminating statement may be used to corroborate
Granados's accomplice testimony. See Alonzo v. State, 591 S.W.2d 842,
844 (Tex.Crim.App. 1980).

[7]Sheriff Stuart also testified that the bullets were imbedded so
deep in the door that, in order to remove them, the front door would
have to be destroyed.